**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**FREDDIE LEE BAKER**                                                                                    **PLAINTIFF**

V.                              **NO. 4:10CV00319 JLH-BD**

**MICHAEL J. ASTRUE, Commissioner,**
**Social Security Administration**                                                                **DEFENDANT**

**RECOMMENDED DISPOSITION**

**I.**     **Procedure for Filing Objections and Introduction:**

This recommended disposition has been submitted to Chief United States District Judge J. Leon Holmes.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the Recommended Disposition.  A copy of objections must be served on the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.  The District Judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

Mail objections to:

>Clerk, United States District Court
>Eastern District of Arkansas
>600 West Capitol Avenue, Suite A149
>Little Rock, AR 72201-3325

## II.     Procedural History:

Plaintiff Freddie Lee Baker brings this action for review of a final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and for Supplemental Security Income ("SSI") benefits under Title XVI of the Act.

Mr. Baker protectively filed his applications for DIB and SSI on September 15, 2005. (Tr. 423) He alleges he became disabled on June 1, 2005, due to cirrhosis of the liver, a spinal tumor at C4-5, lower back pain, hip pain, and high blood pressure. (Tr. 376, 423) At Mr. Baker's request, an Administrative Law Judge ("ALJ")[1] held a hearing on May 16, 2007. (Tr. 419-55) On November 3, 1007, the ALJ issued a decision denying benefits. (Tr. 14-23) Mr. Baker requested review by the Appeals Council. (Tr. 29) The Appeals Council considered additional information provided by Mr. Baker, but it denied review making the ALJ's decision the Commissioner final decision. (Tr. 5-8)

---

[1] The Honorable Mark S. Anderson.

**III.    Background:**

Mr. Baker was forty-six years old at the time of the hearing. (Tr. 425) He had completed the eleventh grade, taking special education classes. (Tr. 425) He had past work experience as a housekeeping supervisor, construction laborer, hospital housekeeper, and an industrial cleaner/pallet jack operator. (Tr. 453) At the time of the hearing, he lived with his wife and adult son. (Tr. 448)

**IV.    Decision of the Administrative Law Judge:**

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)-(g).

The ALJ found that Mr. Baker had not engaged in substantial gainful activity since June 1, 2005, the alleged onset date. (Tr. 16) He found that Mr. Baker's degenerative disc disease, hiatal hernia, and seizures were a severe impairments. (Tr. 16) The ALJ

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 CFR. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

found that Mr. Baker did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 17)

The ALJ determined that Mr. Baker had the residual functional capacity to perform a full range of light work with seizure precautions. (Tr. 17) Based on the testimony of a vocational expert, the ALJ found that Mr. Baker could perform his past relevant work as a housekeeping supervisor, as that job is actually and generally performed. (Tr. 22)

## V.    Analysis:

### A.    *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the administrative record to support the decision. *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009), and 42 U.S.C. § 405(g). "Substantial evidence is evidence that a reasonable mind would find adequate to support the ALJ's conclusion." *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007).

In reviewing the record as a whole, the Court must consider both the evidence that detracts from the Commissioner's decision, as well as the evidence that supports the decision, but the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.  *Mr. Baker's Arguments*

Mr. Baker claims the ALJ's finding, at step four, that he could perform his past relevant work as a housekeeping supervisor, is not supported by substantial evidence. Specifically, he claims the ALJ did not sufficiently discuss the actual requirements of his past work as a housekeeping supervisor and did not specifically set forth his physical and mental limitations to determine how they affect his residual functional capacity. (#14 at pp. 5-8)

1.  Mr. Baker's Past Relevant Work

At step four of his analysis, an ALJ must consider whether a claimant's impairments keep him from doing his past relevant work. 20 C.F.R. §§ 404.1520(e); 416.920(e). A claimant is not disabled if he retains the residual functional capacity to perform: (1) the actual functional demands and job duties of a particular past relevant job; *or* (2) the functional demands and job duties of the occupation as generally required by employers throughout the national economy. *Wagner v. Astue*, 499 F.3d 842, 853 (citing *Jones v. Chater*, 86 F.3d 823, 826 (8th Cir. 1996)); see also *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) ("[w]here the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled").

"The regulations provide that the ALJ may elicit testimony from a vocational expert in evaluating a claimant's capacity to perform past relevant work." *Wagner*, 499

F.3d at 853 (citing 20 C.F.R. § 404.1560(b)(2) ("[w]e may use the services of vocational experts or vocational specialists . . . to obtain evidence we need to help us determine whether you can do your past relevant work, given your residual functional capacity")). The Eighth Circuit Court of Appeals has "implicitly approved of an ALJ considering vocational expert testimony at step four of the evaluation process." *Id*. (citing *Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994)).

Here, the ALJ properly sought testimony from the vocational expert to assist with his determination at step four. The ALJ asked the vocational expert to describe Mr. Baker's past relevant work and give the exertional level, skill level, and Dictionary of Occupational Title's number for each job. (Tr. 153) The vocational expert testified that Mr. Baker's prior work as a housekeeping supervisor was a light, skilled job with a DOT number of 321.137-010.

The ALJ found that Mr. Baker had the residual functional capacity to perform a full range of light work with a limitation for seizure precautions, meaning he was unable to work at unprotected heights, around moving machinery or operate automotive equipment. Because the exertional level of Mr. Baker's prior work as a housekeeping supervisor was light and the job, as defined by the Dictionary of Occupational Titles, does not require work at unprotected heights, around moving machinery or operation of automotive equipment, the ALJ concluded that Mr. Baker could perform his past relevant work as it is generally performed.

Mr. Baker's claim that the ALJ should have asked the vocational expert additional questions about the effect his non-exertional limitations would have had on his ability to perform the specific job Mr. Baker held previously fails. There was ample information from Mr. Baker's testimony, as well as from the documents in the administrative file submitted by Mr. Baker detailing the requirements of his past work, for the ALJ to conclude that Mr. Baker performed the job of housekeeping supervisor at a light level. (Tr. 47-56, 88-89, 96-97, 112-119, 136, 144-48, 157-161, 426-27)

Further, as explained above, a finding that the Mr. Baker could perform the job duties of his previous position is not required. It is sufficient that the ALJ finds that Mr. Baker could perform the job duties of the occupation as generally required by employers throughout the national economy. See *Wagner*, 499 F.3d at 853. The vocational expert's identification of Mr. Baker's past relevant work as housekeeping supervisor as it is generally performed as light, unskilled work, combined with the ALJ's finding that Mr. Baker maintained the residual functional capacity to perform a full range of light work with seizure precautions, is sufficient to support the ALJ's finding at step four. *Id.*

### 2. Mr. Baker's Residual Functional Capacity

Mr. Baker also claims that the ALJ did not sufficiently discuss his physical and mental limitations in order to determine how those limitations affected his residual functional capacity. (#14 at p. 8) Here, however, the ALJ assessed Mr. Baker's residual functional capacity after considering all of his "symptoms and the extent to

which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 17)

Mr. Baker testified that he had seizures, back problems, liver disease, hepatitis C, and tumors all over his body. His wife, Laura Baker, also testified at the hearing and corroborated his testimony. (Tr. 19) The ALJ concluded, however, that Mr. Baker's testimony regarding the intensity and limiting effects of his impairments was not entirely credible. (Tr. 19)

The ALJ assessed Mr. Baker's credibility based on: (1) his daily activities; (2) the duration, frequency and intensity of his pain; (3) precipitating and aggravating factors; (4) the dosage, effectiveness and side effects of medication; and (5) any functional restrictions. See *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ need not explicitly discuss each *Polaski* factor; rather, it is "sufficient if he acknowledges and considers those factors before discounting a claimant's subjective complaints." *Heino v. Astrue*, 578 F.3d 873, 881 (8th Cir. 2009) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1072 (8th Cir. 2004)). This Court may not disturb the credibility decision of an ALJ who considers, but for good cause discredits, a claimant's complaints of pain. See *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006) (citations omitted).

The objective medical evidence supports the fact that Mr. Baker was treated for back pain. An April, 1998 MRI of his lumbar spine revealed disc desiccation at the L3-4 and L4-5 levels but no herniated nucleus pulposus or stenosis. (Tr. 195) Similarly, a

June, 2006 MRI showed degenerative disc disease in the lower lumbar spine with disc desiccation and mild diffuse disc bulges, but no herniation, canal or neural foraminal stenosis.  (Tr. 284)

On February 8, 2006, Derek Lewis, M.D., performed a consultative examination of Mr. Baker.  An x-ray of Mr. Baker's lumbar spine was normal, and the examination showed that Mr. Baker had a full range of motion in his spine, and a good gait.  Dr. Lewis concluded that Mr. Baker had only mild limitations in his ability to sit, stand, walk, lift, and carry.  (Tr. 251-58)

The ALJ found that Mr. Baker's hiatal hernia was a severe impairment.  The objective medical evidence, however, does not support Mr. Baker's claim of disabling pain from this impairment.  Stephen A. Ziller, M.D., diagnosed Mr. Baker with a hiatal hernia on August 12, 2004.  (Tr. 211)  Dr. Ziller treated Mr. Baker for his hernia, as well as other problems, from March 23, 2006 to May 1, 2006.  (Tr. 325-37)  There is no medical evidence to indicate Mr. Baker sought treatment for his hernia after that date.

The ALJ also found that Mr. Baker's seizures were a severe impairment.  On January 21, 2003, he reported to Jefferson Comprehensive Care System complaining of some sort of seizure activity.  (Tr. 312)  Lab results, however, did not suggest a seizure. (Tr. 313)

On May 23, 2006, Mr. Baker was transported by ambulance to Baptist Health "because he was having some type of seizure activity."  (Tr. 322)  C. Ballard, M.D., the

9

emergency room physician, noted there was "no tonic/clonic jerking type movement." (Tr. 322)   Mr. Baker had a CT scan of his head which was "negative except for superficial parietal lesion." (Tr. 323)   He also had an MRI which revealed the parietal lesion to be an artifact and was otherwise negative. (Tr. 323)   Mr. Baker also had an EKG which was normal. (Tr. 323)   Dr. Ballard stated he was "not sure" if Mr. Baker's "abnormal behavior" was seizures or "pseudo seizures." (Tr. 323)   He advised Mr. Baker to follow up with his primary care physician. (Tr. 323)

   Naim Haddad, M.D., a neurologist at the neurology department at the University of Arkansas for Medical Sciences, examined Mr. Baker on August 9, 2006.  He noted that Mr. Baker reported having seizures between the ages of nine and seventeen, but stopped having them at age eighteen.  Mr. Baker reported that he started having seizures again in May, 2006, and had his last one in July, 2006.  Dr. Haddad prescribed Norvasc.

   In February, 2008, Sanjay Reuben Dass, M.D., gave Mr. Baker a refill on his Norvasc, and in March, 2008, increased the dosage. (Tr. 404-405)   In May, 2008, Mr. Baker reported to that he had "episodes of seizures in 2007, but he has not had that anytime now." (Tr. 402)   Mr. Baker reported that he was supposed to follow up with a neurologist, but he did not. (Tr. 402)

   On October 12, 2008, Mr. Baker again reported to the emergency room at the University of Arkansas for Medical Sciences with shaking and head twisting.  After examining Mr. Baker, Dr. Kinchen noted, "this is not a seizure." (Tr. 413)

After considering the objective medical evidence and other evidence relating to Mr. Baker's seizures, the ALJ appropriately incorporated seizure precautions into his assessment of Mr. Baker's residual functional capacity. The seizure precautions limited his ability to work at unprotected heights, around moving machinery, and operate automotive equipment. (Tr. 17)

Mr. Baker was diagnosed with hepatitis C in March 2002. (Tr. 205) In June, 2006, Mr. Baker reported he was taking Rebetol which was to be used with a peg interferon injection to treat his hepatitis C. (Tr. 291) At the hearing, Mr. Baker stated that he had the medication in a box at his house, but never gave himself the injections because he did not have insurance. (Tr. 436) The medical records do not indicate Mr. Baker sought any further treatment for his hepatitis.

Throughout the medical records, Mr. Baker repeatedly reports he had multiple tumors (lipomas) in his body. (Tr. 251, 290, 299, 300, 342, 403) The record reveals that he had a mass removed from his left flank on May 1, 1998. (Tr. 189) On March 15, 2001, Mr. Baker reported to have tender "subcutaneous nodules" on his spine. (Tr. 200) Gregory J. Babbe, M.D., prescribed ice and anti-inflammatory for the nodules. (Tr. 200) On March 16, 2004, Mr. Baker had a shave biopsy of a mole on the left side of his abdomen. (Tr. 305) An MRI of Mr. Baker's pelvis on May 10, 2007, showed no evidence of lipoma or soft tissue tumor. (Tr. 354) Based on the evidence in the record, the ALJ appropriately concluded that Mr. Baker's allegations that he has tumors that

limited his ability to work was not consistent with the objective medical evidence. (Tr. 19-21)

Finally, the ALJ noted that none of Mr. Baker's physicians had limited his activities to the extent he alleged. (Tr. 21) The ALJ concluded that the opinion of Dr. Lewis, who performed a consultative examination of Mr. Baker and concluded that he had only mild limitations in his ability to sit, stand, walk, lift, carry, see, hear, handle, and speak, was entitled to significant weight. (Tr. 22)

The ALJ considered the testimony of Mr. Baker, his wife, and the vocational expert. He also considered Mr. Baker's written statements about the demands of his previous jobs, his limitations, and the records of his treating and consulting medical sources. The ALJ sufficiently considered the effects Mr. Baker's impairments had on his physical and mental limitations, and there is substantial evidence to support the ALJ's conclusion that Mr. Baker retained the capacity to perform a full range of light work with a limitation for work at unprotected heights, around moving machinery, and operating automotive equipment.

## VI. Conclusion:

There is sufficient evidence in the record as a whole to support the Commissioner's determination that Freddie Lee Baker could perform his past relevant work as a housekeeping supervisor and that he was, therefore, not disabled within the meaning of the Act. Accordingly, his appeal is should be DENIED.

DATED this 8th day of March, 2011.

_____
UNITED STATES MAGISTRATE JUDGE